The next matter, number 22-1846, Michelle St. Jean v. Raymond Marchilli. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning, Your Honors. My name is Rosemary Scappiccio. May it please the Court, I represent Michael St. Jean. I'd like to address two issues from the denial of his HABE in the District Court. One is the issue regarding the gray error with respect to the co-defendant's statement being introduced against Mr. St. Jean at trial. The SJC determined that there wasn't an error in terms of that determination. The District Court here agreed that the decision of the SJC was not unreasonable under the circumstances. And we are suggesting that if you look at the record as a whole, it was unreasonable. The District Court and the SJC determined that because there were three people involved in this homicide, that it was just as easy that the blank spaces could have been attributed to the other woman who was involved as opposed to Mr. St. Jean. The problem with that is that on page, and I'm going to direct you to page 224 of the record appendix, the problem with that is that the other defendant's name is mentioned both by first name and by pronoun in the statement itself. Nowhere in the statement is Mr. St. Jean mentioned either by pronoun or by first name. The inference there then is that the blank spaces had to have been as to Mr. St. Jean, not as to the other co-defendant. I'm sorry. I'm sorry. Let's assume you're correct. There was a violation under Gray that was clear. Then could you be sure to address whether that violation had a substantial injurious effect on your client in the trial, particularly given the footprints found in the room and the blood on his jeans? There's no question there was evidence that Mr. St. Jean was there. That's not the point. The point is Mr. St. Jean's whole theory at trial was that he had no idea that this was going to happen, that he didn't participate in it, and that he didn't know that the co-defendant was armed. That was his defense. And when you look at what happens with the statement, what happens with the statement essentially is that the co-defendant confesses. He says he was there. He says that he remembers having a knife in his hand. He doesn't remember slicing the victim's throat. And I think there's something important about that that the court needs to take a look at, and that is they're asking his co-defendant to be part of it. The government is asking the co-defendant to be part of their team, and they're telling him basically this is your opportunity to tell us what happened. And they make this reference to Brady and Moss, and when Brady throws a touchdown to Moss, they don't get the six points. The whole team gets the six points because you're both responsible. And so they're only focused in the statement on two people, the two people that are there in terms of responsibility. And what the statement does essentially by the omissions and by the blank spaces is it put Mr. St. Jean in the room at the time that the victim comes up the stairs, puts Mr. St. Jean in the room at the time that the co-defendant claims that he is attacking the victim. The co-defendant then makes this part of his statement where he says that the victim was still moving, and I just couldn't, I couldn't. And then there's this giant blank spot which seems to suggest something happens, and then they leave. And we know that something that happened is that the victim was killed. And so certainly there's an implication there. There's an implication that the person that is coming down the stairs is Mr. St. Jean, that Mr. St. Jean allegedly sees a neighbor, that Mr. St. Jean thinks the neighbor is calling 911, and that Mr. St. Jean gets in the car and leaves in the victim's car driving it away. Wasn't the evidence pretty overwhelming that he was in the room? Well, the evidence at the point of the trial, yes, there was evidence that he was there. Yes, I'm not going to suggest there isn't. He's in the room. I don't know that it was in the room at the time, no. I don't think that there was overwhelming evidence of that. I think the whole evidence and the bulk of the evidence about that came from the co-defendant's statement. That's why it was so important, and that's why... Yes. So the footprints and the blood on his jeans doesn't mean he was there when it happened. He could have been there after. He could have walked in. He could have not been in the same room. The fact that there was blood on his jacket suggested certainly, if you want to believe that, that he was there. But what was his knowledge? Was he there as an accessory after the fact when this whole thing happened and he panicked and, according to the co-defendant, started cleaning up the blood? This is the type of evidence that you have to be able to confront and cross-examine at a trial. Can I go back to whether the Bruton error finding was unreasonable? Yes. From the district court, there's two arguments I'm understanding the district court concluded, supported the finding that it was not unreasonable what the SJC did, one of which is in the footnote where it says, because Mathurin's name appears unredacted in some places, it was an unreasonable application, which I take as the point you're advancing here. Yes. And the district court says, however, the judge instructed the jury that certain portions of the statements had been redacted based on rules of evidence or other applicable laws and that the jury were not to speculate about gaps or the reasons for the gaps. Therefore, the SJC reasoned the jury may have believed that Mathurin's name was redacted in some places but not others, and this is not an untenable conclusion. What's wrong with that reasoning? What's wrong with that reasoning, Your Honor, is that it's not supported by the record. What was supported by the record, there were two people on trial, my client and the co-defendant. Those are the two people that are on trial. The third co-defendant had pled right before trial. She's not there. And so to suggest that the Commonwealth is putting forth evidence about this person that's not even on trial, she's not there. Why would they need to do that in the middle of a trial? They were marshalling their evidence against the two defendants that appeared before the jury. So it was unreasonable, and I think under the standard in Gray, unreasonable to infer that it was anyone else. In Gray, it was the same thing. The facts of Gray were that. Just to be present, this doesn't mean it's dispositive, but I'm just curious if it's true. I take the point that the name appears in some places in an unredacted form. Yes. Then there's a redaction, and so we've got three people, and you're saying the logical inference is the redacted person can't be one of the persons who was not redacted elsewhere. Right. Just as a simple matter, in the way the redaction appears, though, it's not the case that it would be grammatically incorrect to plug in Mathurin's name in the place where the redaction appears. I just want to be clear on that. It wouldn't be grammatically incorrect? No, because it doesn't reference him or her. So it would not be grammatically incorrect. It wouldn't be nonsense to throw Mathurin's name in. So the argument is just that it's so implausible that a jury would think it could be Mathurin since they elsewhere mentioned the name. That's the idea. That's the argument. And before that— Okay, and then this—go ahead. I'm sorry. I don't want to interrupt you. No, no. You're fine. More important that you understand it, not me. Go ahead. The best way for me to do it is to hear from you. Okay. So the other issue, Judge, is that when you look at the Gray case and you understand that there were other defendants included in Gray, and there were two defendants that it could have been, and even in that situation, because of the way that the redactions happened, the Supreme Court said, No, this is too much. The defendant has the right under these circumstances to be able to confront and cross-examine. You can't do that in a situation where the name is redacted in a way that leads to your client and, I think, nobody but your client. I think that's what happened here. And I understand the Court's decision. I understand where I am in terms of hate petitions. But I do think when you look at all of the redactions in the entire statement itself, it's clear that the co-defendant is referring to Mr. St. Gene coming down the stairs, turning on the light. It's clear that those things happened in a way that it couldn't be the third co-defendant. It had to be him. And that's what makes it different. And the second argument I take the district court's making is that there were multiple limiting instructions, and in the nature of the way this inferential incrimination would work, it would have to be combined in a way that the limiting instruction could be curative. What's your response to that? Well, I don't think you can cure a limiting instruction. I don't think you can use a limiting instruction to cure a violation of this nature. I think I've written about that in the brief, indicating that essentially you can't use a limiting instruction if it's constitutionally efficient. When a co-defendant makes an incriminating statement that refers to a defendant whether redacted or not, the statement is so inherently prejudicial that no limiting instruction will suffice. And that's great. And so you're saying the reliance on the Eighth Circuit's Logan decision was just error? Yes. That's what I said. I know I only have 40 seconds left. I do want to jump to, if I could, the last argument with respect to the 9-11 reference. I know I'm running out of time, so I'm going to be very quick. What the court found with respect to the 9-11 reference, first of all, everybody understands how important the 9-11 issue was. This jury trial happened to start on 9-11, at least the evidence of. The judge then makes the statement that I'm sure you're aware of that essentially says, you know, she was awestruck at the fact when she was on trial, 9-11 happened and the whole jury committed to coming back because they knew that the government had to go on, that they were part of the government. And then she essentially says, and that's what you are. You're part of the government. May I finish this argument? Thank you. You're part of the government. And when she said you were part of the government, what she did is she put the jurors on the side of the government, which is so opposite from what we do as a criminal justice system. The right to a jury trial is individual to a defendant. And the right actually is to a jury of your peers. But when you then have this statement that the jurors are on the government's side, and then you have this evidence that gets introduced at trial about the whole team, you need to be on our team, Brady and Moss are voting for the whole team, that combined with what the judge said about the jury being on the government's team, before they even heard any evidence, they thought they were part of the government because that's what the judge told them, they were part of the government. And, in fact, they were supposed to be the neutral fact finders. They were not supposed to be part of any team. But she put them on the team before the case started, and I think based on what she did, even though the court said there wasn't a bias against the defendant, it's an affront to the entire criminal justice system when a defendant is not afforded his constitutional right to a jury of his peers, an impartial jury. You can't be impartial when the judge decides to put you on his side before you've heard any evidence. Thank you. If there are no further questions. Address of the brief. Thank you, counsel. At this time, would counsel for the appellee please introduce herself on the record to begin? May it please the court, Nicole Nixon on behalf of the appellee, Raymond Marchelli. And just to quickly, I'd like to address both issues that my sister raised and just to briefly address the juror comment issue. I'd just like to distinguish one thing. The remarks were made not at the outset of this trial. It was actually made on the fourth day of trial, and the evidence had already started. I'd also like to point out the fact that these comments, while she did say that the jury was part of the government, they were really tailored towards the importance of the jury system and the importance of the jury system in society and the importance of regular citizens being jurors in cases. So when you look at it in that context, I would say there's clearly no bias that the judge was trying to intimate towards putting the juror on the side of the government. Was there an objection to the comments at the time? There was not. And the SJC did not address that in their decision, but there was no objection. So I think that that just puts a pin on the innocuousness of the comments itself as well. During those first four days, how were the government's attorneys referred to? Were they referred to as the state, the government, the prosecution? I believe it was the Commonwealth, Your Honor. Generally in Massachusetts cases, the prosecution is referenced as the Commonwealth in Massachusetts trials. So if I could just move over to the Bruin issue, because I'd like to spend most of my time as to that one. And I would just note at the outset that the reference to Ms. Mathern, it wasn't made in Gillette's redacted statement. It was made in St. Gene's redacted statement. And I think that's an important distinction because these are two separate statements that were introduced by the Commonwealth. And it's important when you look at the fact that these were two separate statements introduced at different parts in time at the trial, but also when you look at that in context with the judge's limiting instruction that was given at the outset of both of these statements being introduced, which specifically instructed the jury that certain redactions were made, others weren't, and the jurors weren't to speculate about what the gaps were and the reasons for those gaps. So when you look at the limiting instruction also with where Ms. Mathern's name was introduced, it's not easily inferrable, it's not necessarily inferrable or easily inferrable that because Mathern's name was in a limited portion of St. Gene's redacted statement that it must not have been redacted out of a Gillette statement. And as J.C. reasonably found here, because that's where we're at, we're at habeas review, so we have to show an unreasonably application of clearly established law, that the redactions made from Gillette's statement did not obviously refer to Mr. St. Gene. And I'd urge this Court to look at Mr. Gillette's statement as a whole when read not only in context, but the entire statement. Just so I follow, in the statement in which the redaction appears that's the predicate for the Bruton claim, there's no reference to Mathern? That's right, Your Honor, and that's Mr. Gillette's redacted statement. Just to be clear, if you look at the record, the reference to Ms. Mathern, which again it was a reference to her first name and I believe a pronoun that was used, that was made in Mr. St. Gene's redacted statement that was also introduced at trial. And again here, when we're... So the logic would be something like it's plausible that there would be some reason for redacting her name with respect to one statement but not the other? That's right, Your Honor, and that's actually what occurred here. So if you actually look at the record in the, I believe it was a day or so prior to trial at the motion and limine stage, the commonwealth specifically sought to introduce a specific portion of Mr. St. Gene's statement in which he references Ms. Mathern because Ms. Mathern was no longer a co-defendant. She had fled out at that point. So the commonwealth sought to introduce these two limited statements asked of Ms. Mathern from Mr. Gene's interview into evidence, and the judge allowed that because they found it, because the judge found it to be relevant to the joint venture in this case. There was an objection lodged by defense counsel at that time, but it wasn't a Bruton-based objection. It was a relevancy-based objection. I'd also note that the first time this reasoning has been brought up is on federal habeas context review, and I think that's important because it sort of pinpoints the fact that this wasn't a necessary and inescapable inference that the juror could have made this connection where it wasn't raised at the trial level and it wasn't raised at the state appellate level. So there was multiple attorneys and judges who have looked at this and haven't made this connection. Why would the jurors have thought Mathern's name could be included in one of the statements but would have to be whited out in the other? Your Honor, again, I think that goes to the judge's limiting instruction where they weren't to speculate as to why there are gaps in the transcript. I also think it's important when you – If they did, as jurors often do, ask themselves why. What would be your theory as to how they could possibly conclude Mathern's was the one blocked out? I just point out, Your Honor, that jurors are presumed to follow the instructions that are given. But putting that aside, I think you, again, have to look at the context of the statement, Mr. Gullett's redacted statement and the content of what he was actually talking about. And I think it's important to look at his statements but also the detective's questions that were being asked. And when you look at the questions and then the responses to those questions that Mr. Gullett was making, it's clear that he was really only talking about his own involvement in the crime and cover-up. I think when you look at the statement as a whole, there isn't necessarily a suggestion that he was talking about anybody else's involvement in the crime. So when we look at that, then I think the argument that Mathern's name must not have been redacted out becomes even less clear. I'm not following. That's a different theory than the SJC were relying on. Your Honor, I would. That seems like an argument that even if Ms. Mathern's name hadn't appeared elsewhere, you still wouldn't have a brutal error. I would say it's not a different theory, one, because Ms. Mathern's name appearing elsewhere wasn't raised at the state level, so the SJC didn't address it in their decision. I would also say that the SJC in the outset of their decision talking about this brutal issue said that the redactions were made to take out any reference to the existence of Mr. St. Jean. So I think that that's consistent with the argument that I'm making here. But when you look at the SJC's decision, I would agree with you that one of the main bases for their decision is the fact that these gaps in the transcript could have referred to either Mr. St. Jean or Ms. Mathern. Notwithstanding the mention of her name, what is their account? What's the SJC's account of the significance or not of Ms. Mathern's name appearing elsewhere? Are you saying they didn't address that because it was not argued to them that that mattered? That's right, Your Honor. It's not anywhere in its decision that the SJC addressed the fact that Ms. Mathern's name was found in Mr. St. Jean's statement, and that's because it wasn't argued at the state level. What's the significance of that for how we are supposed to address the brutal issue on habeas? I think it's a factual issue where, Your Honor, we're talking about a reason for why the SJC's decision may be unreasonable. It wasn't raised in the state level. I thought you couldn't do that in a habeas petition. That's right, Your Honor. You didn't argue procedural default, did you? I did not argue procedural default at this point, or as to this issue, that's right. But I think the reason why I didn't argue procedural default is because the brutal issue was raised and it was addressed. This is an argument that's being made to show why the SJC's decision is unreasonable. I see. So I think the procedural default... Let me just go through it again. So we don't know what the SJC's answer would be to the argument that the brutal issue is strong because Mathern's name is mentioned elsewhere. We just have the SJC saying internally to the statement itself, you could imagine it would be Mathern. That's right, Your Honor. And then they say that's kind of an unreasonable thing to say when Mathern's name appears elsewhere. And then we have the district court saying, no, it's not, because there was this instruction saying that redactions may occur. Don't speculate why. And then your answer to Judge Chiara's question, okay, fine, is there any rational reason to think it could be Mathern when she's mentioned elsewhere? What would that be? I think one point is that she was not mentioned at all in Mr. Gullett's redacted statement. Because she was mentioned in Mr. St. Jean's redacted statement, the inference isn't necessarily there that because she was referenced in that statement, that she must necessarily not have been redacted out of Mr. Gullett's redacted statement. Those are two separate statements that were introduced into evidence for different reasons. And so we have three people. Is the argument you're making fine? Let's assume it couldn't have been Mathern. It was Gullett, not St. Jean? What's the point you're trying to make? Who do you think the blank would be? Your Honor, it's a little bit tricky for me to answer these questions because there were so many blanks in the transcript. And I think when you actually look at the transcript, it's illuminating to why this is a confusing question for me because there were many blank spaces. And it's not readily inferable to me, and I don't think it was to the SJC, that all these blank spaces were necessarily redactions of somebody's name. Well, did the defendant in making the case to the SJC and then on habeas identify a particular redaction that it was contending would have been filled in with St. Jean and therefore been a Bruton problem? Your Honor, if I could just answer that question, I see my time has expired. The argument to the SJC, at least my understanding of that argument, was that the gaps in the statement in total were Bruton violations. There were a few portions of the statement that were identified, but it was the statement as a whole. And the SJC answered that objection by saying who would be filling in the blank? The SJC answered that question, I would say, in two ways. That the redactions themselves had excised any reference to the existence of Mr. St. Jean. And as well, even if the blank spaces that the petitioner had said referenced Mr. St. Jean, they could have referenced Mathern as well. So I guess I'm still stuck. The argument is, well, it couldn't have because she's mentioned elsewhere. That wasn't made to the SJC, so the SJC never addressed that argument. You didn't argue procedural default. That means do we review that question de novo? Your Honor, I believe, again, that the question goes to the overall Bruton issue. And the Bruton issue was raised at the trial level and it was raised at the state level. The argument that's being made on federal habeas review, the specific factual argument, that because Mathern's name was mentioned elsewhere in St. Jean's statement, there's a necessary and inescapable inference that her name must not have been redacted out of Gullett's statement, I think was an argument to why the SJC's decision wasn't reasonable. Okay, and then last question, just so I still get it. Do you have an answer to what the juror could have thought as to why it would have been St. Jean, why it would have been Mathern and not St. Jean that would have filled it in notwithstanding Mathern's mention elsewhere? Your Honor, my answer to the question, again, this is tricky because we're not talking about a specific portion of the statement. Well, we were just two seconds ago. We're talking about. There was some blank that you were acknowledging they were saying was St. Jean, that the SJC was treating as if it meant St. Jean, that would have been a Bruton problem. But don't worry about it because it means Mathern. Whatever that blank is, with respect to it, is there some account the state has of how a juror could have thought, don't worry, it's not Mathern, notwithstanding Mathern isn't blanked out in the other statement. Your Honor, again, I'll take a portion of the statement, I guess, as an example, because I think that might help me level this argument because, again, it is difficult when we're talking about an entire redacted statement that's hundreds of pages long where there's lots of gaps. So if we're taking, I guess, there was a portion of the statement which talks about Mr. Gullett taking a pizza box and then there's a space and then it says, after the space, cleaning up the blood. So I guess there could be an inference that that was a person's name or a pronoun that was excised out. I don't have an answer for you as to, because of the content of that statement, why that must have been Mathern rather than St. Gene based on the content of the statement itself. But I think when you look at the evidence... But it's really the opposite way. How could it have been Mathern given she's mentioned elsewhere? And your answer to that is? My answer to that is, if I could just understand what you're asking me, you're saying why must it have been Mathern rather than Mr. St. Gene or the opposite? Why must it have been Mr. St. Gene and not Mathern? Given that Mathern's mentioned elsewhere, wouldn't the juror assume they must not be talking about Mathern there because they blanked it out and they didn't blank it out elsewhere? Your answer to that is? My answer to that is that it's not a necessary and inescapable inference. I think when you look at it, and if I could just very briefly just address why I'm saying that. If you look at the decision in gray, the necessary and inescapable inference that that blank space was the defendant is because of the prosecutor's next question to the detective saying, based on the statement, was the defendant arrested? Yes. And I'd also point to the court to Foxworth. Again, the other co-defendant was necessarily excised out of the conversation based on the cross-examination of that detective saying, this was not in reference to the co-defendant, and so the inescapable inference is that it must have been in reference to Mr. Foxworth. Thanks. And with that, I would rest my brief. Thank you. The petitioner is focusing on a statement that was blocked out, that suggests that St. Gene was present in the house at the time of the murder. That's right. And so with respect to that one, do you have in mind which statement that was and how one would read that as being anything other than St. Gene? Your Honor, if I could just grab the transcript so I can give the actual citation. And this is Record Appendix 224 of the petitioner's Record Appendix is what I'm referring to. And I'll read it. So the question is, what do you remember Space taking from there when you left? And the answer is, the guy, the thing, the guy from the dash, things from the guy's pockets, and then the boxes of pizzas. But I remember taking one box of pizza because Blank was cleaning all the blood. The other one got blood on it, and then the chicken went on the floor. So that was the statement I was referring to. And, again, just as an example because there wasn't a specific statement. That doesn't speak to the Blank being present at the time of the murder. That has the Blank cleaning the blood. That's right. Is there one that could be read as saying that Blank was there as or before the blood was on the floor? Your Honor, I think the petitioner had brought up a different Blank. And if I could just read it, this may be inferred that somebody was present. And I think this is the argument that's being made. And this is the Record Appendix 191. And the question is, okay, and when he pulls up, what do you do? Answer, I persuaded him to, like, go in the back. Then there's a big Blank space. And then he goes upstairs. I'm like, what are you doing? Because he starts, like, taking out the pizzas and asking. And there's a space to turn on the light. So I guess that may indicate presence of somebody else at the time. I think when you remember the fact that this transcript wasn't introduced into evidence, it was only used for the jury to follow along as they're listening to the recording, that it would be another, like an inference upon an inference to say that that space referred to a person. However, even if you make that inference, again, it could have been either Mathern or St. Jean based on the context of the statement. I would also point out that even apart from any of this, even assuming if this court finds a Brutman error here, we would still have to show a Brecht error, and I don't think that's been made given the evidence that was introduced in this case. Thank you. Thank you. Thank you. That concludes the argument in this case.